

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| TARA ADAMS, | ) |
| | ) |
| Plaintiff; | ) |
| | ) |
| vs. | ) 2:13-cv-01993-LSC |
| | ) |
| HOUSING AUTHORITY OF | ) |
| THE CITY OF BESSEMER, | ) |
| ALABAMA, | ) |
| | ) |
| Defendant. | |

MEMORANDUM OF OPINION

Before the Court is Defendant Housing Authority of the City of Bessemer, Alabama's ("BHA") Motion for Summary Judgment. (Doc. 25.) Plaintiff Tara Adams ("Adams") brought this civil rights action against BHA, alleging gender discrimination and retaliatory conduct in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Despite being specifically reminded by the Court to provide a response and being granted *sua sponte* an extension of time in which to file a response, Adams, acting *pro se*, has failed to file any response to BHA's motion. Therefore, the Court's consideration of the motion is based solely on BHA's motion and the Court's own review of the attached evidentiary material and

examination of the relevant law. For the reasons discussed below, the motion is due to be granted.

I.  Background[1]

   A.  Employment History

Adams, a female, was hired by BHA as an assistant property manager for Brasswell Homes on October 24, 2006. In February of 2012, Adams was promoted to interim property manager at Southside Homes, after being recommended for that position by BHA's Director of Property Management, Julius Howard ("Howard"). Adams' offer letter stated that her promotion would be for a three month interim period, and would then be reevaluated.

Adams was then transferred to Sunset Homes, where she also held the position of property manager, and remained at that location from April 2012 to January 2013. Adams swapped positions with Jeffrey Wheeler ("Wheeler"), BHA's only male property manager, who was transferred from Sunset to replace her at Southside. On June 12, 2012, Duffey sent Adams a letter extending her interim period for another 60 days. In January of 2013, Adams was transferred back to Southside Homes, and

---

[1] Adams has not disputed BHA's statement of undisputed facts. When a party fails to properly address another party's statement of facts, the Court may treat these facts as undisputed. Fed. R. Civ. P. 56(e)(2). The Court thus generally accepts BHA's statement of material facts. However, in recognition of Adam's *pro se* status, the Court has also looked to Adam's deposition testimony and other evidentiary material to supplement the facts supplied by the BHA.

Wheeler was transferred to another property.

On June 10, 2013, Adams filed a complaint against BHA with the Equal Employment Opportunity Commission ("EEOC"). Adams was then terminated on June 13, 2013 for insubordination and lack of cooperation. Adams returned to the EEOC to sign her complaint on June 17, 2013. Adams' EEOC claim was filed within 180 days of the last allegedly discriminatory act, and her suit was filed on October 30, 2013, within 90 days of receipt of her right-to-sue letter.

B.     Alleged Discrimination and Insubordination

Adams' first supervisor at the BHA was Toni Williams ("Williams"), another woman. Adams believed that Williams routinely violated company policy, and verbally reported Williams for these violations a number of times. In July of 2009, Williams placed a verbal warning for insubordination in Adams' personnel file; Adams denies ever being told about the warning and denies the insubordination. Adams received no further punishment or reprimand at that time.

In October of 2009, Mary Fortson ("Fortson"), Williams' supervisor, sent Adams an "Employee Notification of Intent to Separate" memo, which stated that Adams had expressed dissatisfaction with the BHA and was conducting a search for outside employment using BHA computers. Adams testified that she had actually expressed dissatisfaction only with Williams' improper conduct. Adams admits that

she used BHA computers to investigate a position in Birmingham with the Department of Housing and Urban Development, but says that other BHA employees did the same thing. The memo stated that the matter would be "assessed during the next 30 days," and Adams recalls speaking to Fortson about the problem being "squashed" and them "moving on." (Doc. 25-1 at 19.)

Shortly after her promotion to interim property manager in February of 2012, Adams sent an email to several people within BHA, including Howard and Sharon Duffey ("Duffey") from Human Resources. In that email, Adams complained that "Malcolm," an outside landscaping vendor, had mentioned to her that her promotion was on a three-month trial basis. Adams wrote that she was "disappointed in the lack of professionalism" in disclosing the terms of her promotion, and asked that "the same professionalism and respect given to other employees be given to me." (Doc. 25-2 at 28.)

After receiving the June 12, 2012 email from Duffey extending her interim positing for 60 days, Adams sent Howard an email asking for more details of the interim nature of her position. She also asked if she was being "singled out" or treated with the same procedure as other BHA employees who had been promoted. Adams wrote that she was having a "hard time understanding what looks to me like I am being picked on or discriminated against for some reason." (Doc. 25-4 at 2.) Adams also

copied a real estate broker in Birmingham with the email, because Adams trusted the broker and wanted an outside witness to her complaint. A meeting was held between Adams, Howard, and Duffey following the email, where Adams reiterated that she felt she was being discriminated against for some reason. Following the meeting, Howard issued Adams a written warning for violating company policy by copying a non-BHA employee on her email.

Adams has expressed her belief that her transfer to Sunset in itself was discriminatory, because the property had previously flooded and had numerous mildew and mold problems. The previous manager, Wheeler, also managed Sunset under those conditions.

Adams also believes that she was experiencing discrimination during her time as property manager at the BHA because she was not provided with the same training as other managers. Adams was provided with no formal training to be a property manager. She was not sent to a class to enable her to receive a public housing designation that all other BHA manager's possessed, and was not given the opportunity to shadow another property manager, as some other employees had been given after their promotions. She also states that she was not given proper support when she asked Howard for advice on how to deal with certain issues. Adams also believes that the rules that applied to Wheeler, BHA's sole male property manager,

(removing stalls)

were different than the ones that applied to her, as evidenced by the fact that Wheeler did not do his job but was not fired.

Adams verbally complained about discrimination several times to Lynn Gilbert ("Gilbert"), BHA's maintenance supervisor. Gilbert "agreed that [Adams] was being handled differently," although he "might not have" specifically agreed that Adams was being discriminated against. (Doc. 25-2 at 2.) Adams specifically told Gilbert that she believed she was being discriminated against because she was a woman. (Doc. 25-2 at 2.) On at least two occasions, Gilbert told Adams that she should take her complaints to the EEOC.

At some point in 2013, Adams had a meeting with Howard where she told him that she felt he was discriminating against her. Howard asked if she had a problem with him, and Adams replied by asking if he had a problem with her. The two then "just kind of [sat] there in the office staring at each other." (Doc. 25-2 at 6.) Finally, on June 7, 2013, Plaintiff had a meeting with Howard and Duffey. Adams again stated that she felt she was being discriminated against, and Howard then asked her if she was accusing him of discrimination, to which Adams responded "I will." (Doc. 25-2 at 6.) Adams did not inform Howard or Duffey that she believed she was being discriminated against because she was a woman at that meeting or at any other time; she only ever said she was being discriminated against "for some reason." On that same day, Adams

told Gilbert that she intended to file a complaint with the EEOC. Following the meeting, Howard recommended to Alphonso Patrick ("Patrick"), executive director of BHA, that Adams be terminated.

On June 12, 2013, Howard issued a written reprimand against Adams for rudeness during the June 7 meeting, also admitting that Adams had accused Howard of being rude during the meeting and acknowledging that Adams had expressed a belief that she was being discriminated against for some reason during that meeting. Adams was terminated on June 13, 2013. Both Howard, who recommended that Adams be fired, and Patrick, who made the ultimate decision to fire Adams, have stated that they were unaware of Adams' EEOC complaint when they fired her, and that she was fired solely for insubordination and lack of cooperation. (Doc. 25-5 at 4; 25-6 at 3.)

II.   Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a "genuine dispute" as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The trial judge should not weigh the evidence but must simply determine whether there are any

genuine issues that should be resolved at trial. *Id.* at 249.

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "considering all of the evidence and the inferences it may yield in the light most favorable to the nonmoving party." *McGee v. Sentinel Offender Services, LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (citing *Ellis v. England*, 432 F. 3d 1321, 1325 (11th Cir. 2005)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *Id.* Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

III. Analysis

A. Gender Discrimination

Adams argues in her complaint that she was discriminated against on the basis of her gender because she was treated differently than similarly situated male employees.

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment,

because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "A plaintiff may establish a claim of illegal disparate treatment through either direct evidence or circumstantial evidence." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004). Under Eleventh Circuit precedent, "direct evidence is composed of only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor." *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999) (internal citations omitted). There is no such direct evidence of discrimination in this case, and therefore Adams must prove her case, if at all, using circumstantial evidence.

When a plaintiff "attempts to prove intentional discrimination in violation of Title VII using circumstantial evidence, we apply the now familiar shifting burden framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)." *Id.* at 1267. The plaintiff must first establish a *prima facie* case of discrimination. *Id.* If the plaintiff can satisfy this burden, an inference of discrimination arises. *Id.* The burden is then shifted to the employer to refute this inference by articulating a "legitimate, non-discriminatory reason for its action." *Id.* If the employer articulates a legitimate reason, "then the burden shifts back to the plaintiff to show that the proffered reason

is really pretext for unlawful discrimination." *Id.* The offered reason is not a pretext for discrimination unless the plaintiff can show "*both* that the reason was false, *and* that the discrimination was the real reason." *Springer v. Convergys Customer Mgmt. Grp.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (quoting *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1163 (11th Cir. 2006)) (emphasis in original).

To make out a prima facie case, a plaintiff must show: "(1) she is a member of a protected class; (2) she was qualified for her job; (3) she was subjected to an adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably." *Curtis v. Broward Cty.*, 282 F. App'x 882, 883 (citing *Maynard v. Bd. of Regents of Div. Of Univs of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003)). An adverse employment action may be an ultimate employment decision such as termination. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). To qualify as an adverse employment action, anything less than an ultimate employment decision must "in some substantial way, alter the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect his or her status as an employee." *Id.* (citations omitted). To meet the "similarly situated" requirement, a plaintiff must show that "[she] is similarly situated in all relevant respects to the non-minority employee." *Silvera v. Orange Cty. Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001). When

there are accusations of discriminatory discipline, the "quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Burke-Fowler v. Orange Cty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)).[2]

It appears from Adams' gender discrimination complaint that she is alleging discrimination because other male employees were treated differently when it comes to discipline. There is evidence that several male maintenance staff members were written up for acts of insubordination and lack of cooperation, but received only suspensions, reprimands, or even no discipline, while Adams was terminated.

BHA does not argue that Adams has not satisfied the first two elements of her prima facie case. Adams alleges some misconduct in the issuance of verbal discipline by Toni Williams in 2009, but this does not appear to rise to the level of an "adverse employment action" under the *Crawford* standard because it does not appear to have had a substantial effect on her employment. However, Adams eventual termination for insubordination was clearly an adverse employment action and therefore the question

---

[2] The "nearly identical" misconduct requirement has been called into question by *Alexander v. Fulton Cty.*, 207 F.3d 1303, 1333-34 (11th Cir. 2000), however this Court is "bound to follow *Maniccia*'s 'nearly identical' standard rather than the standard articulated in *Alexander* because when a later panel decision contradicts an earlier one, the earlier panel decision controls." *Burke-Fowler*, 447 F.3d at 1323 n.2.

is whether she was treated less favorably than a similarly situated male employee.

There is not sufficient evidence in the record that the male employees who were written up for insubordination and lack of cooperation were similarly situated to Adams under the *Maniccia* standard. The only evidence provided was that several male employees received write ups for insubordination and were not terminated; there is no evidence concerning what conduct was involved in these instances of insubordination. Therefore the Court does not have enough evidence to determine whether the "quantity and quality of the comparator's misconduct" is nearly identical to Adams'. Because Adams has not shown that these comparators are "similarly situated," she has not met her burden of showing a *prima facie* case of discrimination, and therefore her gender discrimination claim is due to be dismissed.

B. Retaliation

Adams also claims that she was fired in retaliation for making complaints about discrimination in violation of Title VII.

Title VII prohibits retaliation against an employee "because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3. To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that

"(1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford*, 529 F.3d at 970 (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)). To establish a causal connection, "a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (quoting *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999)) (internal quotations omitted). To show that they were not "entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Id.* (citing *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993)).

BHA correctly points out that there is no evidence of a causal connection between Adams' complaints of discrimination and her termination. While Adams did complain to Howard and Duffey that she felt she was being "discriminated" against, Adams did not tell Howard and Duffey that she believed she was being discriminated against because she was a woman or a member of any protected class. Adams stated that she did tell Gilbert that she was being discriminated against because she was a female, but there is no evidence that Gilbert ever communicated that information to either Howard or Patrick, the two people involved in the decision to fire Adams. While

Adams did go to the EEOC to make a complaint against BHA shortly before her termination, there is no evidence that Howard or Patrick were aware of this when they made the decision to fire her. Howard and Patrick have submitted affidavits stating that they were both unaware of any complaints made by Adams to either BHA or the EEOC concerning gender discrimination. Therefore, Adams has also failed to make out a *prima facie* case of unlawful retaliation, and this claim is due to be dismissed.

IV. Conclusion

For the foregoing reasons, BHA's motion for summary judgment (Doc. 25) is due to be GRANTED, because Adams has failed to make out a *prima facie* case of either gender discrimination or retaliation in violation of Title VII.

A separate order will be entered.

Done this 21st day of January 2015.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
177825